MILLER HOTEL COMPANY, Appellee, v. J. F. GORMAN et al.,
Appellants.

**WORDS AND PHRASES:** ''Unpaid Claims or Bills.'' Where a tenant,
1 in effect, assigned his leasehold on real property used as a hotel,
and in the bill of sale of the personal property and accompanying
papers agreed to pay any ''unpaid claim or bill'' contracted while
managing or operating the hotel, *held* that the term ''unpaid claim
or bill'' did not embrace taxes on the premises, when such taxes,
while formally levied, were neither due and payable, nor a lien
on the property.

**SALES:** Remedies of Buyer—Recovery of Taxes on Property. The
2 presumption that personal property taxes are levied against and
are the personal obligation of the owner, who was such at the time
of listing, precludes the assignee of the property from recovering
the amount of the taxes from the former owner, *when such assignee
has never paid said taxes.* What the rule would be if the assignee
were able to show that he had been compelled to pay said taxes in
order to protect his property, *quaere.*

**ASSIGNMENTS:** Rights and Liabilities—Recovery of Taxes by Tenant
3 Assignee. The assignee of a leasehold who has obligated himself
to pay all taxes levied against the premises during the term, may
not recover of his assignor the amount of taxes levied against the
premises for a specific year, unless the assignee is able to show
(1) that the assignor was under legal obligation to pay such taxes,
and (2) that it became necessary for the assignee to pay said
taxes, in order to protect his leasehold.

**EVIDENCE:** Relevancy, Materiality, and Competency—Oral Agree-
4 ment to Pay Taxes. Under an oral assignment of a lease, it is
competent to show by oral testimony that the assignor agreed to
discharge a pro-rata share of the taxes on the premises for a certain
year. Record reviewed, and *held* that plaintiff (the assignee of the
leasehold) had not established his right personally to recover the
amount of said taxes from the assignor.

*Appeal from Scott District Court.*—M. F. DONEGAN, Judge.

NOVEMBER 14, 1922.

ACTION at law, to recover from defendants their pro-rata

share of certain taxes, for which the defendants had been liable, and which became chargeable to the plaintiff, as assignee of the defendants. The answer was, in effect, a general denial. At the close of the evidence, the trial court directed a verdict for the plaintiff, and judgment was entered accordingly. The defendants appeal.—*Reversed.*

*E. M. Sharon, W. M. Chamberlin,* and *F. C. Harrison,* for appellants.

*Lane & Waterman* and *Cook & Balluff,* for appellee.

EVANS, J.—The petition consists of five counts, all respectively setting forth the same cause of action, but based upon different theories of recovery. The facts are less prolix than the issues, and a brief statement of them will aid the brevity of a statement of the issues.

The plaintiff was, on and before December 15, 1915, a hotel-operating corporation. The defendants were, at that time, operating the Davenport Hotel, under a lease from its owner, one Neipp, running from November 1, 1907, to November 1, 1928. Negotiations were begun between plaintiff and defendants, looking to the acquisition of such lease by the plaintiff. Plaintiff secured from the defendants an option to purchase said lease and all the equipment owned by the defendants, for a consideration of $50,000. This option was never in terms accepted, but its purpose was indirectly attained in another manner. The defendants could not, under the terms of their lease, assign the same, without the consent of their lessor. By a subsequent arrangement, to which all the interested parties assented on December 15, 1915, the lease of defendants was by mutual agreement canceled, the cancellation to take effect on December 31, 1915. Neipp thereupon executed to the plaintiff a lease upon the property, at an increase of rental over that paid by the defendants, for a term beginning January 1, 1916, and ending on November 1, 1927. This left on the hands of the defendants a remnant of the leasehold term, amounting to 16 days. At the same time, or on the day following, the defendants delivered to the plaintiff a bill of sale of their entire equipment, including all personal property used by them in the operation of the hotel,

and received from the plaintiff the sum of $50,000, as purchase price. The plaintiff immediately entered into the possession of the hotel and of the equipment, and operated the same under the defendants' lease, from that date until January 1st, and continued the operation thereafter under its own lease. There never was a formal assignment in writing of the remnant of the defendants' leasehold interest. It was not included or referred to in any manner in the bill of sale. It was one of the covenants of the defendants' lease, not only to pay the stipulated rental, but also to pay all taxes and assessments that might be levied against the leased property during the term of the lease. A like covenant was contained in the new lease  to the plaintiff. The controversy arises over the taxes of 1915, which had, in a literal sense, been levied in the year 1915, but which were not due or payable, or a charge upon the property, until January 1, 1916. Such taxes amounted to more than $2,200. The contention of the plaintiff is that the defendants, having operated under the lease for 11½ months for the year 1915, should bear a pro-rata share of such taxes in the same proportion; whereas, the defendants contended that they had discharged their full obligation under the lease, when they paid all the taxes which became payable in 1915, which were the taxes of 1914. There were certain subleases held by the defendants, on all of which they had collected the rent for December in advance. The rents under these subleases were adjusted between the parties hereto, at the time of the execution of the bill of sale, by the payment to the plaintiff by the defendants of one half of the December rent collected by them on each sublease.

The first, second, and fifth counts of the petition are all predicated upon an alleged verbal agreement by the defendants to pay their proportionate share of the taxes of 1915. Counts 3 and 4 are predicated upon certain covenants respectively contained in the bill of sale and in an addendum thereto, the legal effect of which, as contended, would require the defendants to pay such pro-rata share.

I.    We will give our first attention to the writings respectively upon which liability is predicated. The bill of sale of the personal property, Exhibit C, contains a covenant to warrant

and defend the title against the lawful claims of

1. WORDS AND PHRASES: "unpaid claims or bills."

all persons whomsoever. The addendum thereto, Exhibit D, is a covenant that the property covered by the bill of sale is "free and clear of all incumbrance, and there are no outstanding claims against said property thereof." It is further agreed therein that "any unpaid claims or bills of any kind or nature against the defendants while operating the Davenport Hotel will be paid" by them. Counts 3 and 4 of the petition are predicated upon the foregoing written agreements. Count 3 predicates liability thereon for the payment of the 1915 taxes on the real estate; whereas, Count 4 predicates liability thereon only for the personal taxes levied against the defendants, as owners of the personal property comprising the hotel equipment.

It should be noted, at the outset of the discussion, that this is not a case where the plaintiff, as successor or assignee of a defendant, has had to protect his property by the payment of a

2. SALES: remedies of buyer: recovery of taxes on property.

debt or lien which the defendant ought to have paid. The plaintiff has not paid any of the taxes involved in the controversy. Its contention is that it has bound itself to its lessor, Neipp, under the covenants of its lease, to pay the same, though it has not, in fact, discharged its obligation to its lessor. The plaintiff's contention at this point is that the taxes of 1915 were lawful claims against the personal property of the defendants, within the meaning of the covenant of the bill of sale above quoted, and especially that the tax levied against the defendants upon the value of the personal property was a lien or charge, within the meaning of such covenant. Its further contention is that such taxes constituted an unpaid claim or bill, within the meaning of the covenant of the addendum, Exhibit D, above quoted.

As relates to the taxes on the real estate, they were not a lien or charge, either upon the real estate or upon the personal property, on December 15th. There was no breach, therefore, of the covenant of warranty contained in the bill of sale. Were they an "unpaid claim or bill," within the meaning of the addendum? The exact language of this covenant was as follows:

"That any unpaid claims or bills of any kind or nature

against the firm or company of Harrison & Gorman while managing or operating the said Davenport Hotel, will be paid by the undersigned."

Can it be said that these taxes, even though chargeable to the defendants, were an indebtedness incurred *while managing or operating* the Davenport Hotel? This clause has undoubted reference to liabilities arising out of the operation of the hotel. Furthermore, we must presume that personal property taxes levied in 1915 were so levied against the defendants themselves. They were liable therefor to the public treasury. If the plaintiff had been compelled to pay them to protect its property, a different question would be presented. It has not paid them. The liability of the defendants therefor has continued, as before, to the public treasury.

As regards the taxes upon the real estate, it was incumbent upon the plaintiff to show: (1) That the defendants were under obligation to their lessor to pay such taxes; and (2) that it be-

3. ASSIGNMENTS: rights and liabilities: recovery of taxes by tenant assignee.

came necessary for the plaintiff, as assignee or successor in title, to pay the same, in order to protect its leasehold. Neither of these propositions is made to appear from the writings introduced in evidence, if we are to look to them alone. The lease to the defendants was executed in 1907. According to its terms, the term of the lease was to begin on November 1, 1907, and end on November 1, 1928. There is a discrepancy in the lease, which is perhaps not now material, in that it purports, by a part of its language, to be a 20-year lease; whereas, the specific dates fixed for its beginning and its ending are as above set forth, which would make it a 21-year lease. The defendants occupied the premises thereunder for a period of 8 years and 6 weeks, and consented to cancellation for the remainder of the term. This lease provided that the defendants should pay all taxes and assessments levied upon the real estate during the term thereof. Presumably, this would mean that they would pay the taxes for every year of their incumbency. If they had occupied the lease until November 1, 1928, as provided therein, they would have been required to pay 21 annual installments of taxes on the real estate. This could have been carried out by excluding the taxes of 1907, payable in 1908, and including the taxes of 1928, pay-

able in 1929; or by including the taxes of 1907, payable in 1908, and excluding the taxes of 1928, payable in 1929. The parties construed the contract to include the taxes of 1907. This would exclude the taxes of 1928. If this had been an 8-year lease upon the same terms, the defendants would have been required to pay 8 annual installments of taxes, the last of which would have been the taxes of 1914, payable in 1915. These taxes were paid by the defendants without dispute. They had, therefore, discharged their full obligation in respect to taxes up to November 1, 1915. Whether they ought, in equity, to be liable for a portion of the taxes by reason of their six weeks' occupancy after November 1st, is a question which does not seem to be covered by any provision of the writings. In putting this construction upon the defendants' lease, and while recognizing that an ambiguity is created by the discrepancy therein above noted, we are confirmed by the fact that it does not appear that Neipp, the lessor, has ever claimed that the defendants' obligations under the lease are unperformed. Only the plaintiff claims it.

Turning now to the second proposition essential to the plaintiff, as above stated, Was the plaintiff compelled to pay or assume these 1915 taxes as an additional burden, in order to protect the rights acquired by it from the defendants? The lease of the plaintiff, like that of the former lease of defendants, provided for the payment of specific monthly installments of rent, and further, for the payment of all taxes and assessments. The latter provision is as follows:

"It is agreed between the parties that the lessee shall and will pay all taxes and assessments general and special that may be levied against said real estate herein described during the term of this lease including any such assessments or taxes that may have been levied and are unpaid for the year 1915."

The defendants are not parties to this lease, and have no part either in its benefit or burden. They did clear the ground for it by canceling their own lease, but they had no part in the mutual undertakings of the parties thereto as a contract. It is complete in itself, and for all that appears, its considerations are mutual between the parties thereto. It is the provision above quoted upon which plaintiff predicates its claim to have assumed the obligation neglected by the defendants. We are

not, at this point, considering the claim by oral evidence that the obligation was so assumed because of the oral promise of the defendants. We are dealing now only with the sufficiency of the writings, as a basis of recovery. The quoted provision purports to create a primary, and not a secondary, liability, and purports to be a part of the consideration undertaken by the lessee in the contract of lease. It is a part of its original undertaking in the lease. In no sense was the plaintiff compelled to assume it for the purpose of protecting its rights under the lease. It had no rights under the lease, prior to such undertaking. It is to be noted, also, that plaintiff's lease covers substantially a 12-year term. Presumptively, the above quoted provision binds the plaintiff to pay the annual taxes for the number of years covered by its term. For the purpose of the count of 12 years, it would be immaterial whether the 1915 taxes should be excluded and the 1927 taxes be included, or whether the 1915 taxes should be included and the 1927 taxes excluded. The contract declares for the inclusion of the 1915 taxes. Presumptively, this will exclude the 1927 taxes, payable in 1928, though the plaintiff's lease runs to November 1, 1927. The term of plaintiff's leasehold is 6 weeks short of 12 years. The defendants' term of occupancy overran a period of 8 years to the extent of six weeks. Whether the plaintiff in some form of action may be entitled to offset this deficit and surplus against each other is a problem which, upon this record, we are not called upon to solve.

II. Turning now to the question pertaining to oral evidence of an alleged agreement by the defendants to pay their pro-rata share of the 1915 taxes, we think such oral evidence was admissible. It was not in conflict with any provision of any of the writings produced in evidence. The bill of sale was a mere transfer of title of the personal property, with covenant of warranty. It made no reference whatever to the leasehold interest. It did not purport to transfer it. There were no writings which purport to transfer such remnant of leasehold interest. But by the undisputed evidence, the plaintiff did go into possession of the property and did operate under the defendants' lease for a period of 16 days. We think it compe-

4. EVIDENCE: relevancy, materiality, and competency: oral agreement to pay taxes.

tent to show that this was done by an oral arrangement. Neces-
sarily, it would be competent also to show by oral evidence what
such arrangement was. Even in the absence of direct oral evi-
dence of an assignment, such an assignment might be implied or
inferred from the circumstances appearing herein. There was
evidence for the plaintiff, in this connection, that the defendants
did then orally agree to bear their pro-rata share of the 1915
taxes. If, in reliance upon such an agreement and because
thereof, the plaintiff had paid or assumed payment of such 1915
taxes, in such manner as to discharge defendants' obligation to
Neipp, it would be entitled to recover upon the oral agreement.
But though plaintiff introduced evidence of the oral agreement,
it introduced none to the effect that it was because of such agree-
ment that it assumed the payment of the 1915 taxes. Further-
more, the bill of sale and the oral assignment of the leasehold
interest, if any, were had on December 16th; whereas, the plain-
tiff had already assumed the 1915 taxes on December 15th.
Perhaps it could be shown that the matter of the different dates
of the instruments was a clerical error, and that the writings
were contemporaneous; but there is no such evidence. Neither
was the sale of the personal property prior to December 31st
essential to the integrity of the cancellation made by defendants
and by the new lease made to the plaintiff. There is a further
obstacle to plaintiff's recovery, in that it has never paid the
1915 taxes. On the contrary, they were paid by the lessor, Neipp.
Under plaintiff's theory of recovery, the defendants were and
are under obligation to Neipp to pay such taxes. Neipp has
never released that obligation, though it be true that he has not
claimed it. If the defendants owed the obligation to Neipp
when plaintiff assumed it, they still owe it. Plaintiff cannot re-
cover upon it in its own behalf, until it pays it to Neipp, or in
some manner obtains the defendants' release from the obligation
to Neipp.

The verdict was directed. Plaintiff's oral evidence of an
agreement to pay the pro-rata share was essential to plaintiff's
recovery in any amount. This evidence was contradicted by the
defendants. This conflict of itself forbade the direction of a
verdict. If all other obstacles to a submission of the case to a
jury were removed, the jury would be confined in its allowance

to a pro rata, based upon the six weeks enjoyed by the defendants after November 1, 1915. The judgment below must, accordingly, be reversed.—*Reversed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.